[No. 25121-0-I.   Division One.   August 12, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. DANNY T. ROSBOROUGH, *Appellant.*

*Elaine L. Winters* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

GROSSE, C.J. — Danny Rosborough appeals from the judgment and sentence entered following his conviction by a jury of felony harassment. Rosborough contends that the trial court erred in denying defense counsels' motion to withdraw and in denying a motion for a new trial based on an allegation of ineffective assistance of counsel. We affirm.

Rosborough was charged with one count of felony harassment. RCW 9A.46.020. The charge arose from an incident on April 24 through 25, 1989, during which Rosborough allegedly threatened Carolyn Denike with bodily harm and threw two rocks through the bedroom window of her apartment.

Denike testified that she became acquainted with Rosborough in May 1988. The couple saw one another "very often" and went out frequently in the following months. Rosborough told Denike that he loved her and asked her to marry him. Denike felt that Rosborough was becoming too intrusive and attempted to break off the relationship in November 1988. She denied that Rosborough had ever "lived" with her.

On February 17, 1989, after he entered Denike's apartment and removed three necklaces, Rosborough was arrested and charged with second degree burglary. He remained in jail until April 24, 1989, when he entered an *Alford* guilty plea to the burglary charge. Rosborough was released from jail that same day.

Denike testified that beginning at about 6 p.m. on April 24, 1989, she received a series of telephone calls. At first, the caller hung up; Denike later recognized Rosborough's voice. During the last call, which occurred at about 9:45 p.m., Rosborough told her: "Hey, bitch, I could if I wanted to I could blow your F-ing brains out." Following the call, Denike filed a police report and went to bed. Later, in the early morning hours, she was awakened by a "huge crash" and discovered that two rocks had been thrown through the window. Denike called the police. Rosborough was arrested nearby.

Rosborough testified that Denike and he had "hit it off pretty good" and had seen one another at least every other day. After about a month, Rosborough realized that he was in love with Denike. Rosborough stated that he was laid off his job and moved in with Denike on January 2, 1989. Denike told him that the couple would have to keep a "low profile" because of opposition expected from her relatives. Just prior to the burglary, according to Rosborough, Denike told him that she loved him, but needed some time to think things over. Rosborough then left for a

couple of days. Upon returning, Rosborough found that many of his clothes and other belongings were gone. He acknowledged that he took the necklaces, but asserted that he did not intend to keep them permanently.

After leaving jail on April 24, 1989, Rosborough immediately purchased a half pint of whiskey. During the course of the evening, he consumed the whiskey and a number of beers, eventually ending up at a restaurant near Denike's apartment. Rosborough placed several calls to Denike during the evening hoping to obtain an explanation for why Denike no longer wished to see him. In Rosborough's testimony regarding a call he made to Denike at about 9:30 p.m., he stated, "I got mad. I know I called her a bitch."

Rosborough stayed at the restaurant until it closed and then went to Denike's apartment hoping to talk to her. Rosborough admitted that he threw the rocks, but only in an attempt to awaken Denike. Rosborough denied wanting to harm her.

The jury found Rosborough guilty as charged. He timely moved for an arrest of judgment and/or new trial. At the hearing on the motion, counsel for Rosborough moved to withdraw, arguing that they had a conflict of interest because the motion for a new trial was based on Rosborough's claim that he was denied effective assistance of counsel.

Harvey Chamberlin explained that he had represented Rosborough on the burglary charge and had also prepared to represent him on the harassment charge. When the trial date conflicted with Chamberlin's jury duty, he discussed with Rosborough the possibility of continuing the trial date or of having Al Kitching, an attorney from the same office, represent him. Rosborough "was not happy" with either alternative, but did not want to waive his speedy trial rights and agreed to the substitution of counsel.

Prior to trial, Chamberlin informed Kitching of "everything that I thought was important and relevant to the case." After the trial, Chamberlin learned from Kitching that Denike had denied "living" with Rosborough. Chamberlin had been aware of information (and made an offer of proof at the hearing on the motion for a new trial) to the effect that Willie Rosborough, the defendant's brother, could testify that the defendant had given up his apartment and moved in with Denike. Willie Rosborough was also prepared to testify that Denike had delivered "a lot" of the defendant's personal belongings to him after the burglary, including unemployment checks sent to Denike's address — evidence tending to rebut Denike's testimony that the defendant had left only a few things at her apartment. Willie Rosborough would also testify that Denike and the defendant held themselves out as boyfriend and girl friend and had visited his family at Thanksgiving and Christmas. Finally, according to Chamberlin, Denike had told Dr. Bruce Olsen, an expert retained to evaluate Rosborough, that Rosborough "had been staying [at her apartment] a lot and you could say that they were living together."

Chamberlin explained that he made a judgment about the relevance of the information and did not pass it on to Kitching. Kitching stated that had he been aware of the information, he could have used it to impeach Denike by establishing that her relationship with Rosborough was more extensive than she had acknowledged. Chamberlin requested that new counsel be appointed to argue the motion for a new trial.

The trial court denied the motion to withdraw and the motion for a new trial, concluding that the proposed impeachment was on a collateral matter and would not have been permitted if challenged:

> You read it entirely correct, Mr. Chamberlin, and you were correct in your first assessment, and I would have so ruled if

it was brought up. It was entirely impeachment on a collateral matter, which I felt Mr. Rosborough wanted to try his relationship in this courtroom with her. That is not at issue, it's whether or not he was there and did he harass her. Both motions are denied. . . .

Rosborough was sentenced to a term of 7 months in jail.

Rosborough first contends that the trial court erred in denying defense counsels' motion to withdraw. Because the motion for a new trial was based on alleged ineffective assistance, he maintains that defense counsel had a conflict of interest and were thereby unable to provide effective assistance for purposes of arguing the motion.

■ ■ The trial court's determination of whether a defendant's dissatisfaction with court appointed counsel warrants appointment of substitute counsel is discretionary and will not be overturned on appeal absent an abuse of discretion. *State v. Stark*, 48 Wn. App. 245, 252, 738 P.2d 684, *review denied*, 109 Wn.2d 1003 (1987). Factors to be considered include "the reasons given for the defendant's dissatisfaction, together with [the trial court's] own evaluation of the competence of existing counsel and the effect of substitution upon the scheduled proceedings." *Stark*, 48 Wn. App. at 253.

■ Essentially, Rosborough argues that a defendant's allegation of ineffective assistance creates an inherent conflict of interest requiring the appointment of substitute counsel. This court, however, has declined to adopt such an "automatic" substitution rule:

> [The defendant] urges us to adopt a rule requiring the appointment of substitute counsel in cases in which a defendant wishes to argue his counsel's ineffectiveness. In these cases, he argues, counsel is faced with an impossible conflict of interest unless he is allowed to withdraw, and the defendant is denied representation unless substitute counsel is appointed. However, if a defendant could force the appointment of substitute counsel simply by expressing a desire to raise a claim of ineffective assistance of counsel, then the defendant could do so whenever he wished, for whatever reason. . . . We decline to adopt such a rule.

*Stark*, 48 Wn. App. at 253. *Accord, State v. Staten*, 60 Wn. App. 163, 172, 802 P.2d 1384 (1991) (petition for review

filed Feb. 13, 1991);[†] *State v. Young*, 60 Wn. App. 95, 106-07, 802 P.2d 829, *remanded in part on other grounds*, 117 Wn.2d 1002 (1991).

In a statement of supplemental authority, Rosborough has cited *State v. Young, supra.* In *Young*, a prosecution for statutory rape and indecent liberties, the defendant moved for a new trial based on ineffective assistance of counsel. After agreeing with the general rule set forth in *State v. Stark, supra*, the *Young* court distinguished the case before it:

> In this case, [unlike *Stark*], the allegations are based primarily on actions not reflected in the record, such as the failure to call as witnesses Young's former attorney and the attorney's investigator. These witnesses would apparently testify that [the complaining witness] had told them that the appellant had not abused her. Additional affidavits filed by Young were not read or considered by the trial court.

*Young*, 60 Wn. App. at 107. Based on these circumstances, the court concluded:

> The record before us raises sufficient factual issues for us to conclude that it was an abuse of discretion not to appoint new counsel to review the facts and argue the motion for a new trial based on the ineffectiveness of trial counsel.

(Footnote omitted.) *Young*, 60 Wn. App. at 107.

■ While the allegations here are also based on the failure to call certain witnesses, this case otherwise differs significantly from *Young*. First, the missing evidence in *Young* involved statements by the complaining witness that the defendant had not committed the charged crimes. Such evidence could be crucial in a prosecution for sexual abuse. Here, the missing evidence was relevant, if at all, solely on a collateral issue.

Second, apparently unlike the trial court in *Young*, the trial court here conducted a "penetrating and comprehensive" inquiry on the record into the alleged ineffective assistance issue. *Cf. State v. Dougherty*, 33 Wn. App. 466, 471, 655 P.2d 1187 (1982), *review denied*, 99 Wn.2d 1023

---

†Reporter's Note: Review denied at 117 Wn.2d 1011 (1991).

(1983). Despite the inherently awkward nature of such presentations, Rosborough's counsel vigorously and candidly set forth the basis for the claim of ineffective assistance and the purpose that would be served by appointment of substitute counsel. In addition, Chamberlin presented a full offer of proof regarding the nature of the missing evidence. In sum, appointment of new counsel for purposes of arguing the motion was unnecessary since the trial court was fully informed on the issue. Unlike the situation in *Young*, no significant factual issues requiring further investigation remained. Viewed in light of the charged crime, the collateral nature of the missing evidence, and the full argument presented on the issue, the trial court did not abuse its discretion in denying counsels' motion to withdraw.

Rosborough's reliance on *United States v. Ellison*, 798 F.2d 1102 (7th Cir. 1986), *cert. denied*, 479 U.S. 1038 (1987) is misplaced. *Ellison* involved the defendant's motion to withdraw a guilty plea, not a motion to withdraw and substitute counsel as is the case here. *See State v. Staten*, 60 Wn. App. at 172 n.9.

Rosborough next contends that the trial court erred in denying the motion for a new trial based on the allegations of ineffective assistance of counsel. Had trial counsel known of the proposed evidence, Rosborough asserts, he would have been able to impeach Denike's account of the couple's relationship. Rosborough further maintains that had counsel been able to impeach Denike in this manner, the jury could have questioned Denike's credibility regarding the alleged telephone threat.

■ The test for ineffective assistance of counsel is whether (1) defense counsel's performance fell below an "objective standard of reasonableness," and (2) this deficiency prejudiced the defendant. *State v. James*, 48 Wn. App. 353, 359, 739 P.2d 1161 (1987). To establish prejudice, a defendant must show a reasonable probability that but for counsel's deficient performance, the result would have been different. *State v. Leavitt*, 49 Wn. App. 348,

359, 743 P.2d 270 (1987), *aff'd*, 111 Wn.2d 66, 758 P.2d 982 (1988). A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome." *Leavitt*, 49 Wn. App. at 359.

The alleged deficient performance here is Chamberlin's failure to communicate to Kitching certain information known by Willie Rosborough about the relationship between the defendant and Denike. Rosborough has made no argument and cited no authority indicating that Chamberlin's omission constituted deficient performance under the circumstances.

■ Even assuming, however, that Chamberlin's omission constituted deficient performance, there is no reasonable probability that the result would have been different had the deficient performance not occurred. As noted by the trial court, the proposed testimony here would not have been admitted, even if trial counsel had known about it, because it constituted "impeachment" on a collateral matter. *See generally* 5A K. Tegland, Wash. Prac., *Evidence* § 227 (3d ed. 1989). A matter is "collateral" if the fact, as to which error is predicated, could not have been shown in evidence for any purpose independently of the contradiction. *State v. Allen*, 50 Wn. App. 412, 423, 749 P.2d 702 (citing *State v. Oswalt*, 62 Wn.2d 118, 121, 381 P.2d 617 (1963)), *review denied*, 110 Wn.2d 1024 (1988).

Viewed in the light most favorable to Rosborough, the proposed testimony would have tended to contradict certain aspects of Denike's account of the couple's relationship prior to the February 1989 burglary, such as whether they had "lived together". Such rebuttal evidence, however, involved matters only remotely connected to the primary issue at trial, which was what Rosborough said to Denike during the telephone call on April 24, 1989. Any relevance of the proposed evidence beyond contradiction was negligible. Similarly, any effect that the evidence could have had on the jury's assessment of credibility was minimal, since it was evident from Denike's

testimony that the couple had a serious relationship for a period of time.[1]

In summary, the trial court did not abuse its discretion in denying the motion to withdraw and the motion for a new trial.

Judgment affirmed.

SCHOLFIELD and PEKELIS, JJ., concur.

Review denied at 118 Wn.2d 1003 (1991).

---

[1]*Olden v. Kentucky,* 488 U.S. 227, 102 L. Ed. 2d 513, 109 S. Ct. 480 (1988), cited by Rosborough, is distinguishable. In *Olden,* a prosecution for rape, the defendant's theory was consent and that the complaining witness had concocted the rape story to protect her relationship with one of the State's witnesses, with whom she was living at the time of trial. The trial court excluded *all* evidence of the living arrangements, and the Supreme Court reversed, holding that the exclusion had violated the defendant's right to confrontation.

Here, unlike *Olden,* the defendant was able to cross-examine Denike and present his own testimony on the issue of the couple's living arrangement. More important, the excluded evidence in *Olden* went directly to the defendant's theory of the case, involving a motivation for the complaining witness's alleged lying. No similar claim is raised with respect to the evidence here.