996 P.2d 629 (2000)
100 Wash.App. 126
STATE of Washington, Respondent and Cross-Appellant,
v.
David Lawrence JOHNSTON, Appellant.
No. 17950-8-III.
Court of Appeals of Washington, Division 3, Panel Three.
March 30, 2000.
*632 Paul J. Wasson, Spokane, for Appellant.
Larry D. Steinmetz, Deputy Prosecuting Attorney, Spokane, for Respondent. *630
*631 BROWN, A.C.J.
David L. Johnston appeals his convictions for second degree murder, attempted second degree murder, first degree robbery and second degree robbery. He argues the trial court erred by denying his motions to dismiss, allowing the State to amend the information and submit an inferior degree crime to the jury, and giving certain jury instructions that omitted the victim's name. Also, he argues ineffective assistance of counsel and evidence insufficiency to establish accomplice liability. The State urges error in merging the attempted second degree murder conviction into the first degree robbery and applying deadly weapon enhancements. We decide error occurred solely in applying the merger doctrine. We affirm the convictions, vacate the sentence, and remand for resentencing.

FACTS
We give an overview to assist the reader through the critical facts of this case and understand the final charges before the June 1998 jury trial. Mr. Johnston, along with his friend, Aaron Simpson, was involved in three separate events in Spokane during September 1997. First, late on September 7, Mr. Simpson knifed and killed Michael Flees; charges: Count I, second degree murder; alternatively, Count II, second degree felony murder. Second, early on September 8, the pair robbed a Conoco mart where Mr. Simpson stabbed the clerk, Mark Bessermin; charges: Count III, attempted first degree murder (amended at trial to attempted second degree murder); and Count IV, first degree robbery. Third, about two hours later the pair robbed a Texaco mart where Joshua Tyree clerked; charge: Count V, second degree robbery. Count VI alleged an assault on Shane Nelson for which Mr. Johnston was acquitted. It will not be discussed except necessarily. We turn now to the critical facts.
At about 8:30 P.M. on September 7, after an afternoon of drinking, Mr. Johnston and Mr. Simpson, along with a mutual friend, Brodie Dowd, ran into acquaintances Todd Bridges and Shane Nelson. Allegedly, Mr. Simpson used a knife and Mr. Johnston used his fists to assault Mr. Nelson in a dispute related to Mr. Simpson's car. Mr. Nelson testified about Mr. Simpson's use of a knife while in Mr. Johnston's presence.
After the confrontation, all five men went to a nearby motel. Mr. Simpson wanted to question Mr. Bridges and Mr. Nelson about drugs missing from the car. Mr. Johnston, Mr. Dowd, and Mr. Simpson then discussed robbing someone to make up for the loss. According to Mr. Nelson, Mr. Johnston was bragging about having "weapons under control" and "nobody was going to mess with them."
Just before midnight the five men went to see a friend on Crown Avenue. When they arrived, Mr. Simpson and Mr. Bridges knocked on the door. No one answered. Mr. Simpson walked back to the car; Mr. Bridges decided to stay. Just then, a car sped by near Mr. Simpson's car. Mr. Dowd threw up his arms in a gesture of "what is going on." The driver of the speeding car, Michael Flees, stopped and got out for reasons unclear. Mr. Nelson testified Mr. Flees did not appear angry, and speculated that Mr. Flees may have thought someone needed help. Mr. Simpson, Mr. Dowd and Mr. Johnston approached Mr. Flees. Mr. *633 Simpson and Mr. Dowd attacked Mr. Flees. Mr. Johnston got inside Mr. Flees's car, then stood by the driver's door in a position that could be interpreted as preventing Mr. Flees's escape. Mr. Simpson stabbed Mr. Flees. The four remaining men then ran back to Mr. Simpson's car and left. Mr. Flees bled to death near the scene.
The four men returned to the motel. Mr. Simpson, Mr. Dowd and Mr. Johnston were bragging about the stabbing. Mr. Nelson testified that Mr. Johnston never disagreed with Mr. Simpson's actions or tried preventing them. Mr. Johnston and Mr. Simpson continued to talk about committing a robbery. Mr. Nelson decided to sneak away from the others. Mr. Nelson and Mr. Bridges called the police two days later giving information on the Flees stabbing.
Mr. Johnston and Mr. Simpson decided to drive around. At approximately 4:00 A.M. on September 8, they stopped at a Conoco mart. Mr. Johnston went in first to get the key to use the outside restroom. He returned with Mr. Simpson. Both wore hoods over their heads and bandannas around their faces. Mr. Johnston told the Conoco clerk to give him the money out of the till. While Mr. Johnston was taking the money, Mr. Simpson stabbed the clerk five times in the neck and back. After they left, Mr. Simpson disposed of the knife. Mr. Johnston testified it was not until this point, ten minutes after the Conoco robbery, that he realized Mr. Simpson had used the knife.
The men continued driving around looking for drugs to purchase until Mr. Simpson received a page. At approximately 6:00 A.M. they stopped at a Texaco mart located across the street from the Conoco mart they had robbed earlier. Mr. Simpson and Mr. Johnston entered the store and demanded money. The two took money from the till and cigarettes. They then told the clerk to get on the floor. Mr. Simpson kicked the clerk in the back of the head. They told the clerk not to call the police and left. Mr. Johnston and Mr. Simpson were soon arrested.
When Mr. Johnston requested dismissal after the State's evidence, the court denied all requests, except for a newly added charge of attempted first degree murder of the Conoco clerk. The court found no "sufficient factual basis for premeditation." The State then requested to amend the information back to attempted second degree murder, arguing it was a lesser degree of attempted first degree murder. The court granted the State's request, concluding Mr. Johnston would not be prejudiced because he had not yet put on his defense. Mr. Johnston's counsel did not request intoxication instructions.
Over Mr. Johnston's objections, the court gave Instruction No. 8, on accomplice liability and Instruction No. 16A, which provided the elements for attempted second degree murder. Without objection, Instruction No. 16A omitted the name of the Conoco clerk. The jury found Mr. Johnston guilty of Count II, second degree felony murder; Count III, attempted second degree murder; Count IV, first degree robbery; and Count V, second degree robbery. Counts II, III, and IV included special deadly weapon verdicts.
At sentencing, the court merged the attempted second degree murder conviction into the first degree robbery conviction. The judge ran the underlying sentences concurrently to each other and ran all the deadly weapon sentence enhancements concurrently. The base sentence was 195 months, and one 24-month sentence enhancement was added for a total 219-month sentence. Mr. Johnston appealed. The State cross-appealed the merger and the sentence.

ANALYSIS

A. Dismissal Motion
The issue is whether the trial court erred when denying Mr. Johnston's motion to dismiss counts after the State rested.
Preliminarily, Mr. Johnston's pro se supplemental briefing re-alleges verbatim, or by paraphrasing, several of his appointed counsel's issues and arguments, including this one. A pro se supplemental brief should be limited to matters that are believed not to have been adequately addressed by appellate counsel. RAP 10.3(d). Accordingly, we will not separately address Mr. Johnston's similar pro se briefing.
*634 A defendant may challenge the sufficiency of the evidence at the end of the State's case in chief. State v. Jackson, 82 Wash.App. 594, 607, 918 P.2d 945 (1996), review denied, 131 Wash.2d 1006, 932 P.2d 644 (1997). However, "a defendant who presents a defense case in chief `waives' (i.e., may not appeal) the denial of a motion to dismiss made at the end of the State's case in chief." Jackson, 82 Wash.App. at 608, 918 P.2d 945. This is the case here. Following the denial of Mr. Johnston's motions, he presented a defense; thus, he has waived his right to appeal the denial of his motions. The general sufficiency challenge is discussed in part E of this opinion.

B. Inferior Degree Crime
The issue is whether the trial court erred submitting an inferior degree crime, attempted second degree murder, to go to the jury after finding insufficient evidence of premeditation on Count III, attempted first degree murder.
The trial court dismissed the attempted first degree murder count at the close of the State's case but permitted amendment of Count III to specify the inferior crime before submitting instructions to the jury. "A trial court's decision to allow amendment is reviewed for abuse of discretion." State v. Guttierrez, 92 Wash.App. 343, 346, 961 P.2d 974 (1998) (citing State v. Haner, 95 Wash.2d 858, 864, 631 P.2d 381 (1981)). CrR 2.1(d) allows a trial court to amend an information "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." Mr. Johnston uniquely argues a dismissal is like a verdict; hence, the trial court erred by allowing amendment of the information.
However, a ruling on a motion to dismiss is not a verdict under CrR 2.1(d). Black's Law Dictionary defines "verdict" as a formal jury finding on matters submitted for decision. BLACK'S LAW DICTIONARY 1559 (6th ed.1990). Mr. Johnston's characterization of the dismissal as a verdict is thus, improper.
Normally, an amendment after the State rests is improper. State v. Pelkey, 109 Wash.2d 484, 491, 745 P.2d 854 (1987); State v. Hull, 83 Wash.App. 786, 800, 924 P.2d 375 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). However, amending to an inferior degree crime or included offense is proper. Id. "[T]here is no prejudice under Const. art. I, § 22 or the Sixth Amendment when the amendment is to a lesser included offense or an inferior degree crime." State v. Peterson, 133 Wash.2d 885, 893, 948 P.2d 381 (1997) (citing State v. Foster, 91 Wash.2d 466, 472, 589 P.2d 789 (1979)). Further, RCW 10.61.003 permits the jury to find a defendant guilty of any degree inferior to that charged in the information. Here, the trial court merely allowed the State to amend the attempted first degree murder charge to attempted second degree murder, a lesser degree of the same charge. We conclude the trial court did not err when allowing the amendment.

C. Jury Instructions
The issue is whether the trial court erred by omitting the victim's name as an element from Instruction No. 16A.
In wording jury instructions, trial courts have considerable discretion. State v. Brown, 132 Wash.2d 529, 618, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998). A jury instruction is sufficient if it properly informs the jury of the applicable law without misleading the jury and permits each party to argue its theory of the case. Id. The identified issue is raised for the first time on appeal. A challenge to a jury instruction may not be raised for the first time on appeal unless the instructional error is of constitutional magnitude. State v. Dent, 123 Wash.2d 467, 478, 869 P.2d 392 (1994). "Some reasonable showing of a likelihood of actual prejudice is what makes a `manifest error affecting a constitutional right.'" State v. Lynn, 67 Wash.App. 339, 346, 835 P.2d 251 (1992) (quoting RAP 2.5(a)(3)). Although failure to instruct on an essential element is an error of constitutional magnitude, Mr. Johnston has provided no legal support for his contention that the victim's name is an essential element of a crime. Therefore, Mr. Johnston has waived the issue. Moreover, when this issue has been *635 properly raised, it has been decided contrary to Mr. Johnston's position. See State v. Plano, 67 Wash.App. 674, 678-80, 838 P.2d 1145 (1992).

D. Effective Assistance of Counsel
The next issue is whether Mr. Johnston was denied his right to effective assistance of counsel.
To demonstrate ineffective assistance of counsel appellant must show: (1) counsel's representation was deficient; and (2) appellant was prejudiced as a result of that deficient representation. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient" means defense counsel's performance fell below an "objective standard of reasonableness" and prejudice is established by showing a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. State v. Rosborough, 62 Wash. App. 341, 348, 814 P.2d 679 (1991). "Reasonable probability" means "sufficient to undermine confidence in the outcome." Id. at 349, 814 P.2d 679. When counsel's conduct can be characterized as legitimate trial strategy or tactics, it does not support a claim of ineffective assistance. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). Reviewing courts engage in a strong presumption that counsel's representation was effective. State v. McFarland, 127 Wash.2d 322, 336, 899 P.2d 1251 (1995).
Mr. Johnston argues trial counsel rendered ineffective assistance by not raising the defense of voluntary intoxication. While evidence was presented that Mr. Johnston was drinking on September 7 and 8, he provided detailed testimony of the events and drawings. Mr. Johnston was not, however, out of control of himself at any time. See State v. Byrd, 30 Wash.App. 794, 798, 638 P.2d 601 (1981) ("Although there is evidence of considerable drinking, there is none that Miller was out of control of himself at any time.") Trial counsel's failure to present a voluntary intoxication instruction as a trial tactic does not amount to ineffective assistance of counsel.
Mr. Johnston, pro se, alleges he was denied effective assistance of counsel because trial counsel failed to explain accomplice liability to him and trial counsel failed to call certain witnesses. Regarding accomplice liability, whether trial counsel explained this aspect of the law to Mr. Johnston is not within this record. If Mr. Johnston has additional information regarding this issue, the proper procedure would be to file a personal restraint petition. See McFarland, 127 Wash.2d at 337-38, 899 P.2d 1251 (personal restraint petition appropriate means of introducing matters outside record on appeal). Mr. Johnston mentions the failure to call witnesses in the opening of his pro se supplemental brief, but fails to properly argue the issue in the analysis section of his brief. Without supporting argument, this court is unable to review this issue. RAP 10.3(a)(5).

E. Evidence Sufficiency
The issue is whether the State presented sufficient evidence to prove Mr. Johnston acted as an accomplice to Count I, second degree murder, and Count III as finally amended at trial to attempted second degree murder.
In reviewing a challenge to the sufficiency of the evidence, we look at the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Mr. Johnston contends the State did not establish the necessary elements for accomplice liability under RCW 9A.08.020(3)(a) as to the second degree murder and attempted second degree murder convictions. A person is an accomplice if:
(a) With knowledge that it will promote or facilitate the commission of the crime, he
(i) solicits, commands, encourages, or requests such other person to commit it; or
(ii) aids or agrees to aid such other person in planning or committing it.
RCW 9A.08.020(3). This statute "predicates criminal liability on general knowledge of the *636 crime, not on specific knowledge of the elements of the participant's crime." State v. Boot, 89 Wash.App. 780, 793, 950 P.2d 964, review denied, 135 Wash.2d 1015, 960 P.2d 939 (1998) (citing State v. Hoffman, 116 Wash.2d 51, 104, 804 P.2d 577 (1991)).
Mr. Simpson wielded the knife as the principal actor. A rational trier of fact could determine that Mr. Johnston assisted Mr. Simpson by his discussion of robbing and killing prior to Mr. Flees' death and his statements that he had "weapons under control" and "nobody was going to mess with them." Regarding the Flees incident, Mr. Nelson testified that Mr. Johnston appeared to be standing in the doorway of Mr. Flees' car to prevent him from escaping. The trier of fact is in a better position to resolve conflicts, weigh evidence, and draw reasonable inferences from the evidence. State v. Gerber, 28 Wash.App. 214, 216, 622 P.2d 888, review denied, 95 Wash.2d 1021 (1981).
Even though Mr. Johnston testified he was not aware that Mr. Simpson brought his knife into the Conoco station, an accomplice runs the risk that the principal will exceed the scope of the prearranged crime. State v. Davis, 101 Wash.2d 654, 658, 682 P.2d 883 (1984). We conclude evidence was sufficient to support Mr. Johnston's accomplice liability. The trial court did not err giving an accomplice liability instruction to the jury.

F. Merger
The issue is whether the trial court erred by concluding that the merger doctrine applied to merge the attempted second degree murder conviction into the first degree robbery conviction.
Merger is a doctrine of statutory interpretation. In re Fletcher, 113 Wash.2d 42, 50, 776 P.2d 114 (1989). Statutory interpretation is a matter of law. Thus, our review is de novo. The doctrine prevents pyramiding of charges. State v. Vladovic, 99 Wash.2d 413, 419-20, 662 P.2d 853 (1983). The doctrine does not prevent alternative or multiple charging; its application is limited to sentencing decisions. State v. Michielli, 132 Wash.2d 229, 238-39, 937 P.2d 587, 71 A.L.R.5th 705 (1997).
Both state and federal double jeopardy principles prohibit (1) multiple (context: successive) prosecutions for the same offense (a retrial after acquittal or conviction) and (2) multiple punishments (context: cumulative) based upon the same offense (cumulative punishments for one crime committed while in the course of another without legislative authority). Whalen v. United States, 445 U.S. 684, 688-89, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); State v. Laviollette, 118 Wash.2d 670, 674, 826 P.2d 684 (1992).
Our facts do not concern successive prosecutions. Instead, our focus is on multiple punishments. Thus, we must decide whether the Legislature intended to impose cumulative punishments arising from events that have been found to violate more than one statute. Fletcher, 113 Wash.2d at 50-51, 776 P.2d 114. Specifically, did the Legislature intend to impose cumulative punishments for an attempted second degree murder committed while in the course of a first degree robbery?
To constitute the same criminal offense for purposes of double jeopardy, the offenses must be the same in both law and fact. State v. Calle, 125 Wash.2d 769, 777, 888 P.2d 155 (1995). Where an element of one offense is not included in the other, and proof of one offense would not necessarily prove the other, the double jeopardy clause allows separate punishment for both offenses. Id. Clearly attempted second degree murder and first degree robbery are not the same offenses, but the relevant inquiry here is whether the Legislature intended cumulative punishments.
Relevant to a merger analysis are "the location of the offenses within the statutory scheme, the injuries the offenses prohibit, and the presence of language clearly requiring that the State, to prove one crime, prove `not only that a defendant committed that crime ... but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes....'" State v. Taylor, 90 Wash.App. 312, 320, 950 *637 P.2d 526 (1998) (quoting State v. Frohs, 83 Wash.App. 803, 806, 924 P.2d 384 (1996)).
Here, first degree robbery and attempted second degree murder are not located within the same chapter of the Revised Code of Washington. Theft and robbery are under RCW 9A.56 and homicide is under RCW 9A.32. Neither chapter references the other. The attempted murder charge is not used to raise the robbery to a higher degree. See State v. Rivera, 85 Wash.App. 296, 932 P.2d 701, review denied, 133 Wash.2d 1002, 943 P.2d 662 (1997). Additionally, the purposes behind the two chapters are different. "[T]he intent behind robbery is to acquire property while the intent behind attempted murder is to kill someone." State v. Dunaway, 109 Wash.2d 207, 216, 743 P.2d 1237 (1987). One does not further the other. Id. In sum, we conclude the Legislature intended cumulative punishments. Therefore, remand for resentencing is required.
Moreover, attempted second degree murder is a "serious violent offense" while first degree robbery is a "violent offense." RCW 9.94A.030(31)(a) and (38)(a). When merger occurs, the lesser offense merges into the greater offense. State v. Contreras, 124 Wash.2d 741, 745, 880 P.2d 1000 (1994). Accordingly, even if merger was proper, the robbery conviction should have merged into the attempted murder conviction for sentencing purposes.

G. Concurrent Sentencing
The State in its cross-appeal identifies issues related to the trial court's concurrent sentencing for the deadly weapon enhancements and exceptional sentencing. Because remand is required for resentencing and trial court discretion is involved, we defer to the trial court to first consider these arguments. See In re Matter of Charles, 135 Wash.2d 239, 955 P.2d 798 (1998); State v. Brown, 139 Wash.2d 20, 983 P.2d 608 (1999).

CONCLUSION
We hold the trial court did not err when denying Mr. Johnston's motion to dismiss, submitting attempted second degree murder to the jury, or giving instructions. Mr. Johnston received effective assistance of counsel. The evidence is sufficient to support the convictions. The trial court erred when deciding the merger doctrine applied to merge the attempted second degree murder into the first degree robbery. Finally, on remand, the trial court should be given the first opportunity to consider the parties' sentencing arguments related to concurrent or consecutive firearm enhancements and exceptional sentencing. Accordingly, the convictions are affirmed, Mr. Johnston's sentence is vacated, and this matter is remanded for further proceedings consistent with this opinion.
SWEENEY, J., and SCHULTHEIS, J., concur.