# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                     Respondent,<br><br>    v.<br><br>FRANK S. BELLUE,<br><br>                     Appellant. | No.  45232-4-II<br>(Consolidated with Nos. 45262-6-II<br>and 46284-2-II)<br><br>UNPUBLISHED OPINION |
| In re the Personal Restraint Petition of:<br>FRANK S. BELLUE,<br><br><br><br>                     Petitioner. | No.  46284-2-II |

BJORGEN, A.C.J. — Frank S. Bellue appeals his convictions for twenty-three counts of second degree identity theft, two counts of forgery, three counts of unlawful possession of payment instruments, one count of unlawful possession of instruments of financial fraud, one count of second degree possession of stolen property, two counts of leading organized crime, and one count of tampering with a witness.  Bellue also appeals the jury's special verdicts finding that each of those crimes, save the witness tampering offense, constituted a major economic offense.  Bellue claims that (1) the State violated his right to privacy under article I, section 7 of

the Washington State Constitution and his right to freedom from unreasonable search and seizure under the Fourth Amendment to the United States Constitution by entering and searching his hotel room and detaining him without a warrant, (2) his trial counsel rendered ineffective assistance by failing to move to suppress the tainted evidence discovered through the unlawful search and seizure, (3) insufficient evidence supported his convictions for leading organized crime, identity theft, unlawful possession of payment instruments, and possession of stolen property, (4) the trial court failed to enter written findings of fact and conclusions of law when imposing the exceptional sentence, and (5) the trial court impermissibly imposed an exceptional sentence based on accomplice liability. In his personal restraint petition (PRP) consolidated with his direct appeal, Bellue repeats his claims of unlawful search and seizure and of ineffective assistance of counsel.

We hold that (1) Bellue's claims of violation of privacy and unlawful search and seizure, raised for the first time on appeal, do not involve a manifest constitutional error, and we do not reach their merits under RAP 2.5, (2) Bellue's ineffective assistance claim fails because he cannot show prejudice, (3) the State introduced sufficient evidence for a reasonable fact finder to find Bellue guilty of each and every offense beyond a reasonable doubt, (4) the trial court entered the necessary findings of fact and conclusions of law to support the exceptional sentence, (5) the trial court did not impose an exceptional sentence for any offense for which the jury could have found Bellue guilty based on accomplice liability, and (6) Bellue fails to make the showing necessary for relief by way of his PRP. Therefore, we affirm Bellue's convictions and sentence and deny his PRP.

FACTS

On June 5, 2012, an acquaintance of Yolanda Carlson invited her to come to a motel room the acquaintance had rented. Carlson, in turn, invited Bellue, Bellue's son Frank Spencer Bellue (Spencer),[1] and Rochelle Moore to stay with her in the room.

The next morning, Spencer and Moore left the room and went next door to a pharmacy. They planned to "buy cigarettes and . . . various items in the store" using a stolen identity card and check. V Verbatim Report of Proceedings (VRP) at 396-97. The pharmacy's employees recognized that the identification card did not match Moore, at which point Moore became frightened and fled. The pharmacy's employees then called 911 to report the incident, triggering a police response.

The first officer to arrive on scene, Samuel Lopez, found Spencer and Moore standing in the motel's parking lot, smoking cigarettes. When Lopez approached and ordered the two to freeze, they fled toward the motel room where Bellue and Carlson waited. Lopez managed to seize Moore before she reached the room. Spencer made it inside, but emerged approximately 20 to 30 seconds later and police promptly detained him.

Spencer left the door open when he came out. Inside the small room, police could see four people, among them Bellue and Carlson. The officers on scene began ordering each of the room's occupants out for questioning. As they did so, "they started noticing things out in the open that [were] significant" to the investigation of the incident at the pharmacy. II VRP at 24. These included "[r]ipped up checks, lots of them, drug paraphernalia, [and] syringes, that kind of

---

[1] Bellue and his son share the same first and last names. We refer to the defendant by his surname and his son by his middle name for clarity. No disrespect is intended.

thing." II VRP at 24-27, 40. After getting all of the room's occupants out, Lopez decided to secure the room and wait for a search warrant so that police could seize the evidence inside.

Officers detained Bellue and Carlson after they ordered them out of the room. A search of Carlson's backpack disclosed various pieces of identification, checks, and financial documents belonging to other people. After obtaining a search warrant, detectives searched the room. During the search, detectives seized the torn up checks Lopez had seen from the doorway and a purse that contained "various IDs." III VRP at 206. Under a mattress in the room, officers found "a passport, a checkbook and some needles," III VRP at 211, as well as four pieces of identification belonging to four different women. A nightstand in the room contained "two glass pipes commonly used for drugs." III VRP at 212. Finally, police seized a printer in the room.

The State charged Bellue under two different cause numbers, filing several amended informations for each. Ultimately, the State charged Bellue with twenty-three counts of second degree identity theft,[2] two counts of forgery,[3] three counts of unlawful possession of payment

---

[2] A person commits second degree identity theft by "knowingly obtain[ing], possess[ing], us[ing], or transfer[ing] a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1), (3).

[3] A person commits forgery "with intent to injure or defraud[,] he or she falsely makes, completes, or alters a written instrument or . . . possesses, utters, disposes of, or puts off as true a written instrument which he or she knows to be forged." RCW 9A.60.020(1)(a), (b).

instruments,[4] one count of unlawful possession of instruments of financial fraud,[5] one count of

second degree possession of stolen property,[6] and two counts of leading organized crime.[7] After

Bellue's call to Carlson, described below, the State added one count of witness tampering.[8] The

State alleged two aggravators. First, for each offense it alleged that Bellue had committed

multiple current offenses and that his high offender score would result in some of the current

---

[4] A person commits unlawful possession of payment instruments if he or she
>  possesses two or more checks or other payment instruments, alone or in
>  combination . . . [i]n the name of the person or entity, or with the routing number
>  or account number possesses two or more checks or other payment instruments,
>  alone or in combination . . . [i]n the name of a person or entity, or with the routing
>  number or account number of a person or entity, without the permission of the
>  person or entity to possess such payment instrument, and with intent either to
>  deprive the person of possession of such payment instrument or to commit theft,
>  forgery, or identity theft; or . . . [i]n the name of a fictitious person or entity, or with
>  a fictitious routing number or account number of a person or entity, with intent to
>  use the payment instruments to commit theft, forgery, or identity theft.
RCW 9A.56.320(2)(a).

[5] A person commits unlawful possession of instruments of financial fraud by "possess[ing] a
check-making machine, equipment, or software, with [the] intent to use or distribute checks for
purposes of defrauding an account holder, business, financial institution, or any other person or
organization." RCW 9A.56.320(5).

[6] "'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose
of stolen property knowing that it has been stolen and to withhold or appropriate the same to the
use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1).

[7] A person may lead organized crime by "[i]ntentionally organizing, managing, directing,
supervising, or financing any three or more persons with the intent to engage in a pattern of
criminal profiteering activity." RCW 9A.82.060(1)(a).

[8] To commit witness tampering, a person must
>  attempt[] to induce a witness or person he or she has reason to believe is about to
>  be called as a witness in any official proceeding or a person whom he or she has
>  reason to believe may have information relevant to a criminal investigation or the
>  abuse or neglect of a minor child to . . . [t]estify falsely or, without right or privilege
>  to do so, to withhold any testimony.
RCW 9A.72.120(1)(a).

offenses going unpunished. RCW 9.94A.535(2)(c). As a second aggravator, it alleged that each

offense, other than witness tampering, was a major economic offense. RCW 9.94A.535(3)(d).

While Bellue awaited trial, he attempted to some degree to encourage Carlson, who was

in jail, not to testify against him. In addition, based on the recording of a jail telephone call,

officers obtained a search warrant for Bellue's car, which had been impounded. When they

searched the car's trunk, they found 61 pieces of incriminating evidence, including numerous

social security and identification cards, stolen checks, check-making software, and computers.

Testimony at Bellue's trial showed that he would purchase stolen identification cards and

checks taken by car prowlers. Bellue would then use blank check paper and a computer with

check-making software to make forged checks associated with the stolen identity cards. Bellue

would give the stolen identity cards and the stolen or forged checks to Carlson and then he and

Carlson would go into various Tacoma area stores and purchase items, often prepaid debit or gift

cards, using the forged or stolen checks.[9] Bellue, Spencer, Carlson, and Moore would then sell

the gift cards, netting approximately $200 on a good day from these sales.

At the close of evidence, the trial court instructed the jury on principles of accomplice

liability and that it could find Bellue guilty as an accomplice for each offense, with the exception

of the two leading organized crime offenses. In closing argument, the prosecutor availed himself

of those instructions, telling the jury that, at the least, the State had proven beyond a reasonable

doubt that Bellue had acted as Carlson, Moore, and Spencer's accomplice.

The jury found Bellue guilty of all counts and found that each offense, save for the

witness tampering offense, was a major economic offense. At the sentencing hearing, the State

---

[9] The jury in Bellue's trial saw video footage of several of these shopping trips. Bellue accompanied Carlson on at least two of them, although he never approached the check-out counter with her.

6

conceded that the two counts of leading organized crime convictions were based on the same criminal conduct, and the court vacated one of the two convictions. The trial court sentenced Bellue to an exceptional sentence for the leading organized crime offenses. It only entered written findings of fact and conclusions of law supporting the exceptional sentence after Bellue filed his opening brief in this court.

Bellue now appeals.

## ANALYSIS

### I. SEARCH AND SEIZURE

Bellue first argues that police officers (1) unconstitutionally searched the room at the motel without a search warrant,[10] (2) unconstitutionally seized ripped up checks they found during that search without a warrant, and (3) unconstitutionally detained him. Bellue contends that the searches violated his right to privacy under article I, section 7 of the Washington State Constitution and that his detention violated his right to privacy under article I, section 7 and his right to freedom from unreasonable search and seizure under the Fourth Amendment to the United States Constitution. The State argues that we should not reach the merits of Bellue's privacy and search and seizure claims because he failed to preserve them for review. We agree with the State.

One "may raise [a] manifest error affecting a constitutional right for the first time on appeal." *State v. Lee*, 162 Wn. App. 852, 857, 259 P.3d 294 (2011) (citing RAP 2.5(a)). However, where a defendant fails to object to the admission of evidence at trial, the trial court does not err by admitting that evidence and the claim is more "properly considered" as an

---

[10] Bellue's first claim in his statement of additional grounds restates or paraphrases this claim. As such we do not separately address it. *State v. Johnston*, 100 Wn. App. 126, 132, 996 P.2d 629 (2000).

ineffective assistance of counsel claim. *State v. Mierz*, 72 Wn. App. 783, 789, 866 P.2d 65 (1994). Accordingly, a defendant who fails to move to suppress evidence waives any right to its exclusion. *Lee*, 162 Wn. App. at 857 (quoting *Mierz*, 72 Wn. App. at 789). Bellue failed to move to suppress any of the evidence below. Consequently, even if constitutionally based, Bellue waived the claims he makes here on appeal, and we will not address them for the first time on appeal.[11] *Lee*, 162 Wn. App. at 857.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Bellue next contends that his trial counsel rendered ineffective assistance by failing to object to the admission of the evidence seized at the motel. We disagree.

The state and federal constitutions guarantee criminal defendants the right to effective assistance from counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Prevailing on an ineffective assistance claim requires the defendant to show both deficient performance and prejudice. *Grier*, 171 Wn.2d at 32-33 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

To show deficient performance, the defendant must show that his or her counsel's performance fell "below an objective standard of reasonableness." *Grier*, 171 Wn.2d at 32-33

---

[11] Even if we assumed the trial court had erred, we could not review Bellue's claims as raising a manifest constitutional error under RAP 2.5(a)(3) without an adequate record. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Here the record discloses that police searched the room and seized evidence pursuant to a warrant. Because Bellue never challenged the search, the warrant never entered the trial record and we do not know what information the police used to obtain the warrant. Further, the trial court made no credibility findings about the officers who supplied that information. Bellue's failure to challenge the search thus prevented the development of a record needed to evaluate his claims. With that, any error is not manifest and we decline to address his claims on their merits under RAP 2.5(a). *McFarland*, 127 Wn.2d at 333, 334 n.2. The record is also undeveloped as to when police detained Bellue and what they knew at that point. Again, we do not reach his claims as they are not manifest. *McFarland*, 127 Wn.2d at 333, 334 n.2.

(quoting *Strickland*, 466 U.S. at 688). Our review is deferential to trial counsel's choices; therefore, we strongly presume counsel performed reasonably. *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

To show prejudice, the defendant must "establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862). Where the ineffective assistance claim involves the failure to move to suppress evidence, the defendant must show that the trial court probably would have granted the motion in order to show actual prejudice. *McFarland*, 127 Wn.2d at 337 n.4. Bellue fails to show that the trial court would have suppressed any evidence had his counsel actually moved to do so. From the open doorway, where they had a right to be, officers saw torn checks and drug paraphernalia. Police then sought and obtained a warrant to enter Bellue's motel room and seize evidence there. Nothing in the record before us on direct appeal taints that warrant. We therefore cannot say that if Bellue had moved to suppress the State's evidence, the trial court would have excluded it. Because Bellue fails to show prejudice his ineffective assistance claim fails.[12]

### III. SUFFICIENCY OF THE EVIDENCE

Bellue next claims that the State failed to present sufficient evidence to support a number of his convictions. We disagree.

The due process clauses of the state and federal constitutions require the State to prove every element of a crime beyond a reasonable doubt to convict a defendant. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). We review "whether the State has discharged that

---

[12] Bellue also claims his counsel was ineffective for failing to challenge his arrest, but includes no argument apart from claimed flaws in the motel room search. Therefore, this claim must also fail. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

burden by determining whether, after viewing the evidence in the light most favorable to the

State any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Kintz*,

169 Wn.2d 537, 551, 238 P.3d 470 (2010). Where the jury returns a general verdict of guilty for

a crime that the defendant may have committed by alternative means, we must review the record

to determine "whether 'sufficient evidence supports each alternative means.'" *State v. Sweany*,

174 Wn.2d 909, 914, 281 P.3d 305 (2012) (quoting *Kintz*, 169 Wn.2d at 552). A defendant

challenging the sufficiency of the State's evidence "'admits the truth'" of that evidence "'and all

inferences that reasonably can be drawn therefrom.'" *Kintz*, 169 Wn.2d at 551 (quoting *State v.

Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Direct and circumstantial evidence "'are

equally reliable' in determining the sufficiency of the evidence." *Kintz*, 169 Wn.2d at 551

(quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004), *aff'd*, 166 Wn.2d 380

(2009)). We defer to the jury's credibility determinations and resolution of conflicting

testimony. *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 138 (2012), *review denied*, 176

Wn.2d 1015 (2013).

A.      Leading Organized Crime

        Bellue first argues that the State presented insufficient evidence to convict him of leading

organized crime, because it is an alternative means crime and the State did not present evidence

of several of the means. He cites an opinion from Division One of our court, *State v. Strohm*, 75

Wn. App. 301, 879 P.2d 962 (1994), in support of his contention that leading organized crime is

an alternative means offense. The State disagrees, citing our division's opinion in *State v.

Lindsey*, 177 Wn. App. 233, 311 P.3d 61 (2013), *review denied*, 180 Wn.2d 1022 (2014). The

State is correct.

1.      Alternative Means Crime

The legislature may provide that a person can commit a crime by one of a number of distinct alternative means; if it does so it creates an alternative means crime. *Lindsey*, 177 Wn. App. at 240. Whether a particular statute creates an alternative means crime "is left to judicial determination." *Lindsey*, 177 Wn. App. at 240. This judicial determination is largely based on the language and structure of the statutory provision. *Lindsey*, 177 Wn. App. at 240-42.

RCW 9A.82.060(1)(a) provides that "[a] person commits the offense of leading organized crime by . . . [i]ntentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity." In *Strohm*, Division One assumed, without analysis, that this provision created alternative means of leading organized crime. 75 Wn. App. at 304-05. We disagree with that assumption and hold that leading organized crime is not an alternative means crime for two reasons.

First, the language used by the legislature to define the offense of leading organized crime in RCW 9A.82.060(1)(a) suggests that it is not an alternative means crime. Organizing, managing, directing, and supervising, at least, closely relate to each other. *State v. Owens*, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014). Where the terms used to define a crime are closely related, the legislature likely intended to set out "different ways of committing one act" rather than "distinct acts" that constitute alternative means of committing a crime. *Owens*, 180 Wn.2d at 99. Here, like *Owens*, terms such as "organizing" and "managing," or "directing" and "supervising," are so close to the equivalent of each other they cannot be deemed alternative means.

Second, RCW 9A.82.060(1)(a) is not divided into subparts. Where a criminal statute is not structured into subsections, it is less likely that the legislature intended to create an

11

alternative means crime. *Lindsey*, 177 Wn. App. at 241. For these reasons, we hold that leading organized crime is not an alternative means crime.

2.     Sufficiency of the Evidence

With that, we turn to the sufficiency of the State's evidence. The evidence at trial indicated that Bellue bought stolen pieces of identification and checkbooks. Bellue would then use the stolen identities to create forged checks using blank check paper, a computer, check-printing software, and a printer. Carlson and Bellue would use the stolen identities and the stolen or forged checks to buy things from various stores, including prepaid debit or gift cards. Bellue, Spencer, Carlson, and Moore would then sell those gift cards. Moore estimated that the proceeds from the scheme came to approximately $200 per day on a "good" day.

The evidence shows that Bellue organized three or more persons, including Spencer, Carlson, and Moore. The evidence also shows that Bellue bought the identification cards and stolen checks, then forged or altered the checks, and sent Carlson to buy goods using the identification cards and the fraudulent checks. Bellue, Spencer, Carlson, and Moore then sold or traded the items. From that evidence, a rational finder of fact could have found Bellue guilty of leading organized crime beyond a reasonable doubt.

Bellue argues that insufficient evidence supports his conviction because Moore and Carlson testified that, at times, they acted on their own initiative. Moore, however, explicitly set out the structure of Bellue's activities, and the jury could credit her testimony to find him guilty of leading organized crime, even if she sometimes acted on her own. The jury did not credit Carlson's attempts to take the blame for Bellue, and we will not second guess that decision on appeal.

Bellue also claims, without supporting argument, that no evidence shows he intended to engage in a pattern of criminal profiteering. Bellue waived this claim by failing to present reasoned argument to support it. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). The evidence was sufficient to convict Bellue of leading organized crime.

B.      The Possessory Offenses

Bellue also argues that the State failed to prove he possessed stolen identity cards, payment instruments, instruments of financial fraud, or stolen property.[13] We disagree.

Possession may be actual, meaning that the defendant has physical custody of the item, or constructive, meaning that the defendant has dominion and control over the object or the place where the object is found. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994); *State v. Chavez*, 138 Wn. App. 29, 34, 156 P.3d 246 (2007). Dominion and control need not be exclusive. *Chavez*, 138 Wn. App. at 34. We examine the totality of the circumstances to determine whether there is sufficient evidence for a finding of constructive possession. *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977), *overruled on other grounds by State v. Lyons*, 174 Wn.2d 354, 275 P.3d 314 (2012).

Bellue constructively possessed the stolen identification cards, stolen checks, and forged checks found at the motel. Police found him in close proximity to where they would later discover the evidence. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013). He could have, at the time of his arrest, readily reduced all of it to his physical control. *Chouinard*, 169 Wn. App. at 899. Although Carlson was also in the room, dominion and control need not be exclusive. Further, the evidence indicated that Bellue

---

[13] Bellue's second statement of additional grounds claim restates or paraphrases this claim. We therefore do not separately address it. *Johnston*, 100 Wn. App. at 132.

led the group who were staying in the motel. Given that evidence, a reasonable inference is that Bellue had dominion and control over the incriminating evidence and was, therefore, in constructive possession of it.

Bellue also constructively possessed the evidence inside the trunk of his car. Police learned that evidence might be inside the car after listening to Bellue's calls from inside the jail. Carlson testified, and Bellue admitted, that she and Bellue owned the car together. Again, the evidence allowed the jury to reasonably infer that Bellue was in constructive possession of the evidence found in the car's trunk. *See State v. Turner*, 103 Wn. App. 515, 521-24, 13 P.3d 234 (2000).

The jury could also readily find Bellue guilty of each of the possessory offenses as an accomplice, even if it determined that he was not in constructive possession of any of the items underlying the charges. As set out above, the evidence showed that Bellue would buy stolen identity cards and checks, forge new checks or alter the stolen ones, and give them to Moore, Spencer, and Carlson to purchase items. By giving them the materials used to unlawfully obtain the property of others, Bellue, with knowledge that he was promoting or facilitating the commission of a number of crimes, aided Moore and Carlson in the crimes of identity theft, unlawful possession of payment instruments, and possession of stolen property. Accordingly, there was sufficient evidence to show Bellue was their accomplice to each of the possessory offenses. RCW 9A.08.020.

## IV. SENTENCING

Bellue next argues that the trial court (1) failed to enter the findings required for the imposition of an exceptional sentence and (2) improperly imposed an exceptional sentence for an

14

offense on which the court instructed the jury that it could convict based on accomplice liability.

We disagree.

A.      Findings of Fact and Conclusions of Law

Where the trial court imposes an exceptional sentence, it must "set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535. RCW 9.94A.535's "written findings provision requires exactly that—written findings." *State v. Friedlund*, 182 Wn.2d 388, 394, 341 P.3d 280 (2015) (emphasis omitted).

The trial court entered written findings of fact and conclusions of law justifying Bellue's exceptional sentence after he filed his opening brief with this court. Generally we frown upon the entry of belated findings, but will accept them unless the defendant can show prejudice from their acceptance or tailoring of the findings to the issues on appeal, *State v. Smith*, 82 Wn. App. 153, 167, 916 P.2d 960 (1996), or that the findings change the judgment and sentence under review. *Friedlund*, 182 Wn.2d at 395-96. Here, the trial court's written findings and conclusions track its oral ruling, meaning that Bellue cannot show prejudice or tailoring. Further, as we explain below, the findings and conclusions do not change Bellue's sentence and, therefore, do not modify the judgment and sentence before us on review. We accept the findings and conclusions and reject Bellue's claim of error.

B.      Exceptional Sentence

The Sentencing Reform Act of 1981, chapter 9.94A RCW, permits the trial court, under certain circumstances, to depart from the standard sentencing range for an offense. RCW 9.94A.535. Among these circumstances, the trial court may impose an exceptional sentence if a jury finds that the State has proven one of the aggravating circumstances codified in RCW 9.94A.535(3) beyond a reasonable doubt and the trial court determines that the "facts found are

15

substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.537(6).

The jury found that Bellue committed major economic offenses, one of the aggravating

circumstances justifying an exceptional sentence under RCW 9.94A.535(3), and the trial court

made the necessary findings.

> We review the trial court's imposition of an exceptional sentence
>
> us[ing] a three-pronged test: (1) Are the reasons supported by the record under the clearly erroneous standard of review? (2) Do those reasons justify a departure from the standard range as a matter of law? And (3) was the sentence imposed clearly too excessive or lenient under the abuse of discretion standard of review?

*State v. Davis*, 146 Wn. App. 714, 720, 192 P.3d 29 (2008).

A trial court may generally not impose an exceptional sentence based on accomplice

liability. *State v. Hayes*, 177 Wn. App. 801, 807, 312 P.3d 784 (2013), *aff'd*, 182 Wn.2d 556

(2015). While this general rule gives way to specific provisions in the code that authorize an

exceptional sentence based on accomplice liability, *see State v. Pineda-Pineda*, 154 Wn. App.

653, 661-62, 226 P.3d 164 (2010), the code provision allowing the trial court to impose an

exceptional sentence for a major economic offense does not provide such authorization. *Hayes*,

177 Wn. App. at 810-11. Consequently, a trial court may not impose an exceptional sentence for

major economic offenses if it has instructed the jury that it may convict the defendant on the

underlying offense based on accomplice liability. *Hayes*, 177 Wn. App. at 810-11.

The trial court did not impose an exceptional sentence for any offense for which it

instructed the jury on accomplice liability. The sentence ranges the trial court imposed for each

count make clear that it was imposing an exceptional sentence only on the leading organized

crime conviction. The trial court properly did not instruct the jury that it could convict Bellue of

leading organized crime as an accomplice. There was no error.

V. PERSONAL RESTRAINT PETITION (PRP)

A petitioner may challenge his or her detention by way of a PRP. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 128-31, 267 P.3d 324 (2011). Bellue's PRP alleges violations of his right to privacy and ineffective assistance of counsel, which are claims of constitutional error under article I, section 7 of the Washington Constitution and the Fourth Amendment of the United State Constitution. To obtain relief for an alleged constitutional error through a PRP, "the petitioner must demonstrate by a preponderance of the evidence that petitioner was actually and substantially prejudiced by the error." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004), *cert. denied*, 134 S. Ct. 62 (2013). The showing needed to demonstrate actual and substantial prejudice in the context of an ineffective assistance claim is the same as the showing needed to show prejudice under *Strickland*. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012), *aff'd*, 798 F.3d 840 (9th Cir. 2015).

Bellue's first PRP claim is that the State violated his article I, section 7 rights when it searched the motel and seized both him and the evidence from the room. He offers evidence that shows the police officers entered the room and seized the torn checks by bagging them before the warrant was served. The police, however, only seized the evidence after they had obtained the search warrant, and Bellue does not show that the warrant was obtained using any information gained in an illegal search. For example, Bellue's evidence corroborates Lopez's trial testimony that he saw the checks from outside the room, which is constitutionally permissible. *See State v. Gibson*, 152 Wn. App. 945, 956, 219 P.3d 964 (2009). Because the warrant authorized police to seize the checks, the law did not require their exclusion at trial. *See State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005). Bellue shows no error.

Bellue's second PRP claim restates his ineffective assistance claim. As discussed above, Bellue fails to show that the trial court would have granted a motion to suppress. Under *Crace*, he has therefore failed to show actual and substantial prejudice. 174 Wn.2d at 847.

Bellue's third PRP claim contends that his attorney performed ineffectively by failing to show him surveillance tapes from the motel, which he claims would show an illegal search. Bellue fails to show that the tapes even exist, let alone that they show the police engaged in illegal search. Bellue's assertions about evidence that he has not seen is the type of "speculation [or] conjecture" that cannot satisfy his burden of establishing an error and actual and substantial prejudice. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Each of Bellue's PRP claims fail.

## CONCLUSION

We affirm Bellue's convictions and resulting sentence and deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

BJORGEN, A.C.J.

We concur:

Lee, J.

Sutton, J.