IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 31585-1-III |
| Respondent, | ) | |
| v. | ) | |
| MISAEL CORTES-PEREZ (aka MISAEL VILLA), | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, C.J. — Misael Cortes-Perez[1] appeals his conviction of three counts of delivery of marijuana. He contends he was denied his constitutional right to present a defense when the trial court limited his cross-examination of the Walla Walla police department's paid informant and that the trial court imposed a 12-month term of community custody in violation of the constitutional prohibition against ex post facto laws.

---

[1] In the record, we note different spellings for Mr. Cortes-Perez's last name. For the purposes of this opinion, we will use the spelling which appears on the amended information.

We find no abuse of discretion in the trial court's limitations on cross-examination. But the community custody term imposed for these crimes committed in 2008 was based, in error, on current law. We affirm the conviction and remand for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

In January 2008, Walla Walla police detectives conducted three controlled buys of marijuana from Misael Cortes-Perez using a paid informant, Jose Luis Gonzalez. Mr. Cortes-Perez was arrested immediately after the third controlled buy and was thereafter charged with three counts of involving a person under 18 in an unlawful controlled substance transaction. Several months later, Mr. Cortes-Perez pleaded guilty to one count and was sentenced to 51 months of confinement and 9 to 12 months of community custody.

More than four years later, and after serving his time, Mr. Cortes-Perez's guilty plea was vacated based on his trial lawyer's failure to adequately advise him of the immigration consequences of his guilty plea.[2] The State filed an amended information adding three charges of delivery of marijuana within 1,000 feet of the perimeter of a school grounds and the case proceeded to trial.

---

[2] On the first day of trial, the prosecutor explained to the court that Mr. Cortes-Perez had served his prison time, "[a]nd the only reason why we are back here now is because of this immigration issue." Report of Proceedings (RP) at 71.

In a motion in limine raised at the outset of trial, the prosecutor asked that the defense be precluded from questioning Mr. Gonzalez about his personal use of marijuana other than any use during the controlled buys, arguing that other use was irrelevant. Mr. Cortes-Perez resisted the motion, claiming that Mr. Gonzalez had admitted in a defense interview to weekly marijuana use over many years and the history of use (at least up to the effective date of Initiative 502, which legalized the possession and consumption of marijuana) was relevant to show both that he was in violation of the contract he had signed to serve as an informant and that he had access to marijuana from sources other than Mr. Cortes-Perez. On the latter point, Mr. Cortes-Perez told the court he wished to offer evidence of Mr. Gonzalez's habitual use of marijuana as a motive for Mr. Gonzalez to feign buys from Mr. Cortes-Perez so that he could continue to be paid and "keep on getting his drugs." RP at 27. Mr. Cortes-Perez acknowledged that officers involved in the controlled buys would testify that they searched Mr. Gonzalez before and after the controlled buys but argued that the officers never did a strip search, and "essentially . . . what we would be showing is that the repeated . . . use of marijuana gave him the opportunity to . . . do the old switch-a-roo thing." RP at 26.

The trial court ruled tentatively that evidence of Mr. Gonzalez's marijuana use unconnected in time to the controlled buys or appearance at trial had a prejudicial effect that outweighed its probative value. But it said it would entertain further argument of Mr. Cortes-Perez's objection to the limitation later in the trial.

3

Mr. Cortes-Perez's lawyer renewed his argument that the evidence should be admitted at least three additional times. He raised it the second morning of trial, identifying a further reason for wishing to examine Mr. Gonzalez: he informed the court that Mr. Gonzalez admitted when interviewed that he worked as a paid informant in part "because I want to get drugs off the street[s]"—a motive for working as an informant that Mr. Cortes-Perez wanted to impeach. RP at 89.

The trial court was not persuaded and ruled that Mr. Gonzalez could be examined as to his use of marijuana only at times close to the drug buys or close to the time of his testimony. The court indicated that under a balancing test "we're way off track" and that it viewed any violation of the informant contract as a collateral matter. RP at 93. As to reasons why Mr. Gonzalez might be working as an informant, the court responded that he would not have a problem with the lawyer asking. But he then warned, "To then say, well, I'm going to impeach you because, no, I think the real reason you're doing this is for some other reason, I think that's where we start to go off track here, and that's where I think it's just more prejudicial than it is probative of anything." RP at 100-01.

Walla Walla police Sergeant Chris Buttice, who had been a detective at the time of the controlled buys in 2008, was called by the State thereafter and testified to the controlled buy procedure that was followed in the case of each purchase from Mr. Cortes-Perez. It included searching Mr. Gonzalez before the purchase to ensure that he had no money or drugs on him, providing him with bills whose serial numbers had been

4

recorded, taking him to within several blocks of where he would be meeting Mr. Cortes-Perez, arranging for him to be observed by one or more detectives who could see that there was a hand-to-hand exchange, obtaining the acquired drugs from Mr. Gonzalez upon his return, and searching him again to ensure that he had no other drugs or money on him.

Sergeant Buttice testified that on January 8, 2008 he had provided Mr. Gonzalez with $40 with which Mr. Gonzalez purchased an eighth of an ounce of marijuana, on January 9 he provided him with $80 with which Mr. Gonzales purchased a quarter ounce of marijuana, and on January 30 he provided him with $250 with which Mr. Gonzalez purchased an ounce. The sergeant testified that on the second occasion, he was close enough to see the money change hands and to see Mr. Cortes-Perez counting the bills as he walked away; on the third occasion, they actually arrested Mr. Cortes-Perez following the hand-to-hand exchange and recovered the $250 in recorded bills in his possession.

On cross-examination, Sergeant Buttice acknowledged that informants are required to sign a contract stating that they will not violate any laws. He agreed with Mr. Cortes-Perez's lawyer that he would have stopped using Mr. Gonzalez as an informant if he had learned he was violating the law. He also agreed on cross-examination that Mr. Gonzalez was getting paid anywhere from "$50 to $100 to $200, depending on what it was that he was purchasing," but added that "$200 would be an extraordinary circumstance. That was not the norm." RP at 186.

5

During Sergeant Buttice's testimony, an objection by the State led to excusing the jury, and the trial court and the lawyers engaged in their third extended discussion of the defense's desire to present evidence of Mr. Gonzalez's drug habit in order to show a motive to feign drug buys from Mr. Cortes-Perez. The trial court expressed its view that the theory that Mr. Gonzalez would get marijuana from a third party, not smoke it but "keister" it to evade search, produce the keistered marijuana following the ostensibly controlled buy, and then use the cash he was paid as an informant to buy other marijuana that he *would* smoke, "just defies logic." RP at 202. Later, the court observed:

> There again, you just lose me. He just gave the police an ounce of
> marijuana, worth $250, and you're saying he's doing it for the money[?]
> He gave away the $250, too.

RP at 297. The court refused to reconsider its order excluding the evidence.

When the State called Mr. Gonzalez as a witness, he admitted he began working with police after being caught with marijuana but had become a paid informant by the time he engaged in the three controlled buys from Mr. Cortes-Perez. In cross-examining Mr. Gonzalez, defense counsel asked if Mr. Gonzalez shared Detective Buttice's desire to take drugs off the streets and Mr. Gonzalez agreed that was something he wanted.

During a recess following that testimony, defense counsel argued that Mr. Gonzalez opened the door to inquiry into his drug use by agreeing that he shared then-Detective Buttice's desire to get drugs off the streets. Consistent with its prior ruling that

it would not allow a setup,[3] the court did not find that any door had been opened and cautioned defense counsel, "Once I made a ruling, I made a ruling. I don't want you to look for ways to get around it." RP at 325.

Finally, and through a subsequent offer of proof outside the presence of the jury, Mr. Cortes-Perez's lawyer elicited testimony from Mr. Gonzalez that he once told the detectives with whom he was working that he used marijuana weekly. Mr. Gonzalez claimed not to remember when. Mr. Cortes-Perez argued that he should be allowed to present evidence of Mr. Gonzalez's weekly habit to impeach Sergeant Buttice's testimony that he had been unaware Mr. Gonzalez was violating any laws, and would not have used him if he had known. The court again refused to allow the questioning.

The jury found Mr. Cortes-Perez guilty of three counts of delivery of marijuana. The court sentenced Mr. Cortes-Perez to 18 months confinement and imposed a community custody term of 12 months. Mr. Cortes-Perez appeals.

---

[3] The court had told defense counsel:

[W]e'll see if the door is opened to impeach a statement like, ["]well, it is just to get drugs off the street.["] And I'm not going to let you . . . set it up yourself to introduce a statement like that, and then impeach it in that manner."

RP at 92.

ANALYSIS

*I. Limitation on cross-examination of the paid informant*

Mr. Cortes-Perez's first assignment of error is that the trial court denied his constitutional right to present a defense by improperly limiting his examination of Mr. Gonzalez.

State rule makers have broad latitude under the United States Constitution to establish rules excluding evidence from criminal trials, but "[t]his latitude ... has limits. 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

Evidentiary rules can impermissibly abridge a criminal defendant's right to present a defense, but only if they are "'arbitrary or disproportionate' and 'infringe[ ] upon a weighty interest of the accused.'" *State v. Rafay*, 168 Wn. App. 734, 796, 285 P.3d 83 (2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170, 187 L. Ed. 2d 117 (2013). "The Supreme Court has generally found such an abridgment only when the evidentiary ruling

8

effectively prohibited the substantive testimony of the defendant on matters relevant to the defense or the testimony of a percipient witness." *Id.* (citing examples). The constitutional concern, then, is with evidence that is relevant but excluded by rules that serve no legitimate purpose or that are disproportionate to the ends they are asserted to promote. *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Article I, section 22 of the Washington Constitution guarantees criminal defendants a right to present testimony in their defense that is equivalent to the right guaranteed by the United States Constitution. *See State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983).

Mr. Cortes-Perez frames his assignment of error in constitutional terms but then fails to articulate a constitutional challenge to any state evidentiary rule or to its application to particular evidence. He argues only that the evidence of Mr. Gonzalez's marijuana use was relevant, was admissible under ER 404(b), was admissible under ER 607, and was admissible for impeachment purposes. Since he is challenging only the trial court's application of state evidence rules rather than the rules themselves, he has not sufficiently presented any issue of due process. *See* RAP 10.3(a)(6).

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

9

Although the rules of evidence allow some attacks on character and some impeachment of credibility, they impose limitations on such evidence even where the evidence is arguably relevant. As Professor Edward J. Imwinkelried has explained,

> Ideally, we want the jury to: use admitted items of evidence as proof of only the factual propositions the judge admits them to prove, ascribe the proper probative weight to each item of evidence, and concentrate on the historical issues in dispute in the case.

EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS, § 501 at 211 (9th ed. 2015). To that end, Prof. Imwinkelried has described the federal rules of evidence, on which the Washington evidence rules are largely patterned, as "empower[ing] the judge to exclude technically relevant evidence which realistically poses a danger to this model." *Id.* at 212.

In this case, ER 403 and other principles that limit character evidence and impeachment to its proper roles were reasonably applied by the trial court.

*ER 404(b): Evidence of Motive*

Mr. Cortes-Perez first contends that the trial court erred by not admitting evidence of Mr. Gonzalez's prior marijuana use under ER 404(b) to show motive, intent and opportunity to fabricate marijuana buys from Mr. Cortes-Perez in order to make money to support his weekly drug habit.

The trial court viewed the notion that Mr. Cortes-Perez got marijuana that he craved from a third party, so he could pretend to get it from Mr. Cortes-Perez, so that he

10

could get paid, so that he could buy the marijuana he craved from a third party and smoke it, as implausible. Had a dubious theory of defense not gone hand-in-hand with evidence of illegal drug use by the State's witness, the court might have allowed Mr. Cortes-Perez to present his theory and let the jury decide for itself. Under ER 404(b), however, the trial court was required to engage in a well-settled analysis before admitting evidence of this other crime, wrong, or act by Mr. Gonzalez.

Evidence of a person's other bad acts is never admissible to prove the character of a person to show that he acted in conformity with his character on a particular occasion. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). But evidence of a person's other acts may be admissible for other purposes, including to prove motive, opportunity, or intent. Nothing in the text of ER 404(b) limits its application to prior misconduct of a party.

To satisfy itself that evidence of prior misconduct is not being employed for the purpose forbidden by ER 404(b), the trial court must, before admitting such evidence, "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Yarbrough*, 151 Wn. App. 66, 81-82, 210 P.3d 1029 (2009) (citing *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

11

In the view of the trial court, Mr. Cortes-Perez's proposed evidence ran into trouble at the third and fourth steps of the analysis. While the evidence was ostensibly offered for intent, motive, and opportunity, the court found the defense theory too implausible to support true relevance for any of those identified purposes. And even if theoretically relevant, the trial court concluded that the limited relevance was outweighed by the prejudicial effect of the evidence. We find no abuse of discretion in the trial court's application of ER 404(b).

*ER 607 and 608: Impeachment by Specific Instances of Conduct*

Mr. Cortes-Perez next argues that Mr. Gonzalez's marijuana use was admissible under ER 607, which provides, "The credibility of a witness may be attacked by any party, including the party calling the witness." He argues that the marijuana use demonstrated Mr. Gonzalez's ongoing violation of his informant contract, a matter relevant to his credibility.

ER 607 makes the "relatively narrow point" that even the party calling a witness may impeach him or her; it is the rules following ER 607, and in a few instances case law, that regulate *methods* of impeachment. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 607.1 at 378 (5th ed. 2007). Mr. Cortes-Perez's argument that he should have been allowed to use Mr. Gonzalez's violation of the informant contract to demonstrate his lack of credibility is governed by ER 608(b), addressing when specific instances of conduct can be offered to attack credibility.

12

ER 608(b) provides that such instances may, "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination." Not every instance of even a key witness's misconduct is probative of a witness's truthfulness or untruthfulness under ER 608(b). *State v. O'Connor*, 155 Wn.2d 335, 350, 119 P.3d 806 (2005). An instance of dishonesty can be collateral and not relevant to the guilt issues in a case. *State v. Griswold*, 98 Wn. App. 817, 831, 991 P.2d 657 (2000), *abrogated on other grounds by State v. DeVincentis*, 150 Wn.2d 11, 74 P.3d 119 (2003). In exercising its discretion, a trial court properly considers both (1) whether the instance of misconduct is relevant to the witness's veracity on the stand and (2) whether it is germane or relevant to the issues presented at trial. *O'Connor*, 155 Wn.2d at 349. The trial court should be reversed only if no reasonable person would have decided the matter as the trial court did. *Id.* at 351 (citing *State v. Thomas*, 150 Wn.2d 821, 856, 83 P.3d 970 (2004)).

The State argued that since the Walla Walla police department's contract prohibited violating laws while working for the police in an informant capacity, Mr. Gonzalez "by the letter of the contract . . . complied with the contract." RP at 354. And when the court commented on the application of ER 608, Mr. Cortes-Perez's trial lawyer stated, "Just so the Court has a heads-up as to where we are coming from, we wouldn't be offering it [the evidence of Mr. Gonzalez's personal marijuana usage or contract violation] under Evidence Rule 608." RP at 25. Given the disagreement over whether

13

the contract was violated, its collateral relationship to the prosecution, and Mr. Cortes-Perez's disavowal of reliance on ER 608(b), we find no abuse of discretion.

*Impeachment by contradiction*

Mr. Cortes-Perez next argues that he should have been allowed to offer evidence of Mr. Gonzalez's marijuana use as contradicting and thereby impeaching testimony of both Mr. Gonzalez and Sergeant Buttice.

He wished to use the evidence of drug use to impeach Mr. Gonzalez's agreement with defense counsel's leading question about how Mr. Gonzalez, like Sergeant Buttice, wanted to "tak[e] drugs off the streets." RP at 321. The trial court had warned the defense that it would not allow it to elicit Mr. Gonzalez's agreement with that lofty motive and then impeach him with otherwise inadmissible evidence. It did not abuse its discretion. *Cf. State v. Howard*, 127 Wn. App. 862, 869, 113 P.3d 511 (2005) (criminal defendant may not call a witness as a subterfuge to place before the jury evidence that is otherwise inadmissible).

Finally, the trial court did not abuse its discretion by refusing to allow Mr. Cortes-Perez to impeach Sergeant Buttice's testimony that he would not have used Mr. Gonzalez as an informant if he knew he was violating the law with the offered proof that Mr. Gonzalez once told detectives about his weekly marijuana use.

Impeachment by specific contradiction is presumptively admissible under modern evidence rules, but when the matter on which a witness is being contradicted is collateral

it presents dangers of waste of time and confusion of issues. JOHN W. STRONG ET AL., 1 MCCORMICK ON EVIDENCE, § 45 at 185 (5th ed. 1999). Mr. Cortes-Perez's offer of proof did not establish that Mr. Gonzalez's statement to detectives took place at a time when it would be inconsistent with Sergeant Buttice's testimony. Moreover, whether then-Detective Buttice was aware that Mr. Gonzalez was using marijuana was a collateral matter. A matter is collateral if the fact, as to which error is predicated, could not have been shown in evidence for any purpose independently of the contradiction. *State v. Rosborough*, 62 Wn. App. 341, 349, 814 P.2d 679 (1991).

The trial court did not abuse its discretion in excluding evidence of Mr. Gonzalez's marijuana use for this purpose.[4]

*II. Community custody sentence*

Mr. Cortes-Perez's second assignment of error is to the 12-month term of community custody imposed, which he argues violates the prohibition on ex post facto laws. Statutes in effect when Mr. Cortes-Perez committed the three marijuana deliveries imposed a discretionary range of postconfinement community custody of 9 to 12 months.

---

[4] The State also makes a persuasive argument that any error in admitting the evidence was harmless because Mr. Cortes-Perez's lawyer developed evidence throughout trial that Mr. Gonzalez was not credible and was motivated by self-interest. Even without Mr. Gonzalez's admission that he was smoking weekly, the defense was able to demonstrate that Mr. Gonzalez used marijuana in violation of his contract with Walla Walla police. It was the central theme of the defense's closing argument. *See* Br. of Resp't at 14-16. In light of our finding of no abuse of discretion, however, we need not review the issue of harmless error further.

Former RCW 9.94A.505(2)(a)(iii); .715(1); .850(5) (2008). Consistent with those provisions, Mr. Cortes-Perez was sentenced to 9 to 12 months of community custody after entering his guilty plea.

The legislature amended the Sentencing Reform Act in 2009 to impose a mandatory 12-month term of community custody. LAWS OF 2009, ch. 375, § 5; RCW 9.94A.701(3)(c). Following the jury trial in 2013, the court sentenced Mr. Cortes-Perez to "community custody . . . for 12 months." Clerks Papers at 74. While the court did not indicate whether it was applying the statutes as they existed in 2008 or 2013, the judgment and sentence referred only to the then-current statute. *Id.*

We review alleged violations of the prohibition of ex post facto laws de novo. *State v. Pillatos*, 159 Wn.2d 459, 469, 474-77, 150 P.3d 1130 (2007). The party disputing the constitutionality of a statute bears the burden of proving that the statute is unconstitutional beyond a reasonable doubt. *State v. Enquist*, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011).

Both the United States and Washington Constitutions prohibit ex post facto laws. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. "A law that imposes punishment for an act that was not punishable when committed or increases the quantum of punishment violates the ex post facto prohibition." *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 861, 100 P.3d 801 (2004). To demonstrate that the law being challenged operates ex post facto as to his crime, a defendant must show that the law "operates retroactively, i.e., it

16

applies to conduct that was completed before the law was enacted, and that the challenged law increases the penalty over what it was at the time of the conduct." *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 545, 277 P.3d 657 (2012).

The 2009 amendments whose application is challenged by Mr. Cortes-Perez do operate retroactively, as expressly provided by the legislature:

> This act applies retroactively and prospectively regardless of whether the offender is currently on community custody or probation with the [Department of Corrections], currently incarcerated with a term of community custody or probation with the department, or sentenced after the effective date of this section.

LAWS OF 2009, ch. 375, § 20.

And the challenged law changes the penalty for the conduct from 9 to 12 months of community custody to a mandatory 12 months. In *Lindsey v. Washington*, 301 U.S. 397, 401-02, 57 S. Ct. 797, 81 L. Ed. 1182 (1937), the United States Supreme Court held that if the effect of a new statute is to make mandatory what was before only a maximum sentence, then it operates to the detriment of a defendant within the sense proscribed by the federal ex post facto clause. *Lindsey* is controlling here.

Because the statutory provision challenged by Mr. Cortes-Perez was applied retroactively and increased the amount of prescribed standard of punishment, we reverse his sentence and remand for resentencing in accordance with this opinion. The convictions are affirmed.

17

No. 31585-1-III
*State v. Cortes-Perez*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Brown, J.